**JARVE GRANATO STARR, LLC**
ADAM M. STARR, ESQUIRE - #020302000
10 LAKE CENTER EXECUTIVE PARK
401 ROUTE 73 NORTH, SUITE 204
MARLTON, NJ 08053
ASTARR@NJ-TRIALLWYERS.COM
TEL (856) 235-9500
FAX (856) 235-9502

**THE SWAIN LAW FIRM, PC**
ANDREW D. SWAIN, ESQUIRE - #042651994
2410 BRISTOL ROAD
BENSALEM, PA 19020
SWAIN@SWAINLAWFIRM.COM
TEL: (215)750-7200
FAX: (215) 750-9294

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **DANA OPPENHEIMER AND ADAM BOAZ, h/w**<br>2164 Meetinghouse Road<br>Cinnaminson, NJ 08077,<br>**Plaintiffs,**<br>**v.**<br><br>**CRYOPORT, INC.**<br>112 Westwood Place, Suite 350<br>Brentwood, TN 37027<br><br>and<br>**CRYOPORT SYTEMS, LLC**<br>112 Westwood Place, Suite 350<br>Brentwood, TN 37027<br><br>and | CIVIL CASE NO. 26-cv-<br><br>**COMPLAINT AND JURY DEMAND** |

**EDSP, LLC d/b/a HATCH EGG DONATION AND SURROGACY**
10880 Wilshire Boulevard, Suite 370
Los Angeles, CA 90024

and

**PFC MANAGEMENT LLC**
10880 Wilshire Boulevard, Suite 370
Los Angeles, CA 90024

and

**PACIFIC FERTILITY PARENT LLC**
10880 Wilshire Boulevard, Suite 370
Los Angeles, CA 90024

and

**PACIFIC FERTILITY CENTER LOS ANGELES**
10880 Wilshire Boulevard, Suite 300
Los Angeles, CA 90024

and

**JOHN DOE #1-10/JOHN DOE CORP. #1-10 (fictitious names),**

**Defendants.**

Plaintiffs, Dana Oppenheimer and Adam Boaz, wife and husband, by way of Complaint against the above-captioned defendants, allege as follows:

**PARTIES**

1. Plaintiffs, Dana Oppenheimer and Adam Boaz (hereinafter "Plaintiffs" and/or “Ms. Oppenheimer” and/or “Mr. Boaz”) are wife and husband residing in the State of New Jersey, with an address of 2164 Meetinghouse Road, Cinnaminson, New Jersey 08077.

2. Defendant, Cryoport, Inc. (hereinafter, collectively "Cryoport") is an entity in the business of packing/shipping/delivering temperature-sensitive biologic materials throughout the United States of America with its principal place of business located at 112 Westwood Place, Ste. 350, Brentwood, Tennessee 37027.

3. Defendant, Cryoport Systems, LLC (hereinafter, collectively "Cryoport") is an entity in the business of packing/shipping/delivering temperature-sensitive biologic materials throughout the United States of America with its principal place of business located at 112 Westwood Place, Ste. 350, Brentwood, Tennessee 37027.

4. Upon information and belief, Cryoport Inc., manages, oversees and supervises Cryoport Systems, LLC, which provides temperature controlled transportation services including the vehicles, equipment, devices and personnel. These Defendants shall collectively be referred to as "Cryoport".

5. Defendant, EDSP, LLC d/b/a Hatch Egg Donation and Surrogacy (hereinafter, "Hatch") is an entity in the business of egg donation and surrogacy providing fertility services throughout the United States of America with its principal place of business located at 10880 Wilshire Boulevard, Ste. 370, Los Angeles, California 90024.

6. Defendant, PFC Management, LLC, is an entity in the business of egg donation and surrogacy providing fertility management services throughout the United States of America with its principal place of business located at 10880 Wilshire Boulevard, Ste. 370, Los Angeles, California 90024, and is a healthcare management company that operates fertility service businesses including Pacific Fertility Center Los Angeles (PFCLA) for in vitro fertilization (IVF) and Hatch Egg Donation and Surrogacy.

7. Defendant, PFC Fertility Parent, LLC, is an entity in the business of egg donation and surrogacy providing fertility management at its principal place of business located at 10880 Wilshire Boulevard, Ste. 370, Los Angeles, California 90024, and manages PFC Management and

its fertility management services.

8. Defendant, Pacific Fertility Center Los Angeles (hereinafter, “Pacific”) is an entity in the business of egg donation and surrogacy providing global fertility services with its principal place of business located at 10880 Wilshire Boulevard, Ste. 300, Los Angeles, California 90024.

9. EDSP, LLC d/b/a Hatch Egg Donation and Surrogacy, PFC Management, LLC, PFC Fertility Parent, LLC, and Pacific Fertility Center Los Angeles, share common ownership, management, employees and/or leadership, are affiliated entities, and unless otherwise indicated, shall be referred to collectively as “Hatch”, the “Hatch Defendants”.

10. John Doe #1-10 is an individual who is an employee and/or servant and/or agent and or ostensible agent of Cryoport, Hatch, Pacific and/or John Doe Corp. #1-10 (fictitious names) whose name(s) and address(es) have not been identifiable through the exercise of due diligence.

11. John Doe Corp. #1-10 (fictitious names) is/are entities in the business of providing medical, donation, surrogacy, fertility and or biomedical transportation whose name(s) and principal place(s) of business have not been identifiable through the exercise of due diligence.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Plaintiffs are citizens of the State of New Jersey.

14. Defendants are citizens of the State of Tennessee (the Cryoport Defendants) and the State of California (the collective Hatch Defendants) who, upon information and belief, provide their

respective services to individuals throughout the United States of America.

15. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

16. This Court has personal jurisdiction over Defendants because Defendants have sufficient contacts with the State of New Jersey, including offering their respective services to patients within the State of New Jersey.

## **FACTUAL ALLEGATIONS**

17. At all material times, Plaintiffs were/are husband and wife and residents of the State of New Jersey.

18. For medical reasons, Plaintiffs have been unable to conceive and pursued fertility treatment for several years in an attempt to have a biological child of their own.

19. Plaintiffs attempted multiple failed IVF treatments at great emotional and financial cost.

20. Finally, Plaintiffs were able to create two (2) viable embryos through preimplantation genetic testing in New Jersey.

21. On October 7, 2025, six (6) embryos were cryopreserved following retrieval and genetic testing.

22. On October 15, 2025, one of the aforementioned embryos was identified through genetic testing to be suitable for transfer.

23. Having failed to conceive and due to concerns about Plaintiff, Dana Oppenheimer’s, ability

to carry a pregnancy to term, on November 8, 2023, Plaintiffs contracted with Hatch under the "Peace of Mind Program," a fixed fee surrogacy program at a cost of $147,000.00.

24. The Hatch program and related fertility services required coordinated performance by EDSP, LLC d/b/a Hatch, PFC Management, PFC Fertility Parent, LLC, Pacific Fertility Center Los Angeles (collectively referred to as "Hatch" below unless otherwise indicated), the Cryoport entities, and other persons or entities involved in the custody, handling, transportation, receipt, and preparation of Plaintiffs' embryos.

25. Arrangements were made to transport two (2) embryos from New Jersey to defendant, Pacific, in California.

26. The aforementioned transportations services were arranged by defendants and such transportation services were to be supervised, coordinated and/or performed by one or both of the Cryoport Defendants.

27. In connection with the services to be rendered by Cryoport, Plaintiffs were provided insurance coverage in the amount of $25,000.00. Such coverage was issued by AXIS Insurance Company through EPIC Insurance Brokers.

28. Plaintiffs did not select Cryoport as their transportation provider nor were they given options for another provider.

29. The Cryoport Defendants undertook to pack, ship, transport, safeguard, and deliver Plaintiffs' cryopreserved embryos to Pacific in a condition suitable for the intended fertility treatment and transfer.

30. The transportation undertaking required Cryoport, at a minimum, to maintain custody and control of the shipment from New Jersey; use appropriate packaging and shipping procedures; preserve required cryogenic conditions; accurately identify and account for the embryos and straws entrusted to it; timely deliver the shipment; and deliver the shipment in a condition permitting

Pacific to locate and use the embryos for the planned procedure

31. Upon delivery of the frozen embryos to defendant, Pacific, on November 24, 2025, during the preparation for the frozen embryo transfer procedure it was discovered that the one viable embryo could not be located in the straw in which it was transported.

32. Despite attempts for an explanation, no individual or entity has ever provided Plaintiffs with an explanation as to the reason the embryo was lost or otherwise destroyed.

33. It is undisputed that Plaintiffs are entirely faultless for the loss and/or destruction of the embryo.

34. Plaintiffs did not cause or contribute to the loss, destruction, disappearance, or unavailability of the embryo suitable for transfer.

35. The lost/destroyed embryo represented Plaintiffs only realistic chance for achieving a successful pregnancy through surrogacy rendering the surrogacy contract impossible to perform.

36. As a result of multiple factors including age, failed IVF and the emotional impact of having experienced the loss/destruction of a viable embryo, Plaintiffs have abandoned the prospect of attempting another attempt at IVF.

37. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs sustained economic losses, including amounts paid for fertility, surrogacy, transportation, insurance, and related services, and suffered severe emotional harm and other damages

## COUNT ONE—NEGLIGENCE AS TO ALL DEFENDANTS

38. All the allegations contained above are incorporated herein and made a part hereof but for the sake of brevity are not set forth.

39. Cryoport, the Hatch collective entities, and the Doe Defendants owed Plaintiffs a duty to exercise reasonable care in providing, arranging, coordinating, handling, storing, shipping, receiving, preparing, and accounting for Plaintiffs' embryos.

40. Defendants' duties included duties to safeguard Plaintiffs' embryos while under their custody, control, direction, or supervision; use reasonable procedures to identify, track, and account for each embryo and straw; preserve necessary conditions during storage, preparation, and transportation; and communicate material information concerning the condition, location, custody, and availability of Plaintiffs' embryos.

41. Defendants breached their duties by failing to properly retrieve, store, cryopreserve, prepare, pack, ship, track, receive, locate, account for, thaw, and/or prepare Plaintiffs' embryos for transfer.

42. Defendants further breached their duties by failing to maintain appropriate conditions for the safe transport and handling of Plaintiffs' embryos and by failing to provide an explanation for the embryo's loss, destruction, disappearance, misidentification, or unavailability.

43. Defendants had a duty to use reasonable care in hiring, retaining, training, and supervising the employees, agents, contractors, carriers, couriers, and other persons entrusted with Plaintiffs' embryos or involved in the transportation services.

44. Defendants also had a duty to establish, implement, and enforce reasonable procedures concerning the handling, identification, custody, tracking, storage, packaging, shipment, delivery, and documentation of cryopreserved biological materials.

45. The collective Hatch Defendants breached those duties by failing to reasonably hire, retain, train, and supervise a proper company and persons responsible for transporting and handling Plaintiffs' embryos and by failing to ensure compliance with appropriate procedures for safe transportation and accurate accounting of the embryos.

46. The Cryoport Defendants breached those duties by failing to reasonably hire, retain, train, and supervise persons responsible for transporting and handling Plaintiffs' embryos and by failing to ensure compliance with appropriate procedures for safe transportation and accurate accounting of the embryos.

47. Defendants' negligent hiring, retention, training, and supervision permitted or caused the loss, destruction, disappearance, misidentification, mishandling, or unavailability of Plaintiffs' embryo suitable for transfer.

48. At all material times, Defendants each owed a duty of care to Plaintiffs that was breached to their great detriment for each of these reasons and for the reasons set forth below.

49. The negligent acts and/or omissions of Defendants included, but were not limited to:

a. Failure to properly retrieve embryos for transport;
b. Failure to properly store embryos for transport;
c. Failure to properly cryopreserve embryos for transport;
d. Failure to properly prepare embryos for transport;
e. Failure to properly pack/ship embryos for transport;
f. Failure to properly maintain vehicle(s), equipment, devices and facilities for the proper temperature and for the safe shipping and storage of embryos;
g. Failure to timely deliver and thaw embryos;
h. Failure to properly manage the business, hire, supervise and manage employees, contractors, servants and agents;
i. Failure to properly prepare embryos of transplantation; and,
j. Were otherwise negligent.

50. As a proximate cause of Defendants' negligent acts and/or omissions as set forth herein, Plaintiffs did suffer and are suffering irreparable emotional harm and economic loss and have

been otherwise damaged.

**WHEREFORE**, Plaintiffs demands judgment against each Defendant in excess of $150,000, plus interest and costs, and for all relief permitted by law.

## COUNT TWO—BREACH OF CONTRACT AS TO EDSP, LLC D/B/A HATCH EGG DONATION AND SURROGACY

51. All of the allegations set forth above are incorporated herein and made a part hereof but for the sake of brevity are not set forth.

52. Plaintiffs and Hatch entered into the Peace of Mind Program agreement, under which Plaintiffs agreed to pay Hatch $147,000 for surrogacy-related services.

53. Hatch's obligations included providing or coordinating the surrogacy-related services for which Plaintiffs paid, including arranging for the transfer of embryos necessary to the contemplated surrogacy process.

54. Plaintiffs performed their obligations under the agreement or were excused from further performance because the embryo necessary for the planned transfer was not preserved and made available for that transfer.

55. Hatch breached the agreement by failing to provide the promised services in a manner that preserved Plaintiffs' opportunity to proceed with the intended surrogacy arrangement and by failing to ensure that the embryo required for transfer was available for the planned procedure.

56. Plaintiffs demand the return of all funds held by Hatch or its affiliated escrow agent reserved for IVF and surrogacy related services which have been effectively been terminated.

57. Defendant has not returned the funds in escrow or which they otherwise control or possess.

58. As a result of the breaches and negligence of Hatch or its affiliated companies, all money possessed by Hatch or its escrow agent should be returned to Plaintiffs.

59. Hatch's breach was a substantial factor in causing Plaintiffs' damages.

**WHEREFORE**, Plaintiffs demands judgment against each Defendant in excess of $150,000, plus interest and costs, and for all relief permitted by law.

**COUNT III — BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST TO EDSP, LLC D/B/A HATCH EGG DONATION AND SURROGACY**

60. All of the allegations set forth above are incorporated herein and made a part hereof but for the sake of brevity are not set forth.

61. The Peace of Mind Program agreement imposed on Hatch an implied covenant that Hatch would not do anything that unfairly interfered with Plaintiffs' right to receive the benefits of the agreement.

62. Plaintiffs had a right to receive the surrogacy-related services for which they paid, including coordinated services directed toward an embryo transfer necessary to the contemplated surrogacy arrangement.

63. Hatch unfairly interfered with Plaintiffs' contractual benefits by failing to provide or coordinate the promised services in a manner that preserved the availability of the embryo needed for the intended transfer.

64. Hatch's conduct was a substantial factor in causing Plaintiffs' damages.

**WHEREFORE**, Plaintiffs demands judgment against each Defendant in excess of $150,000, plus interest and costs, and for all relief permitted by law.

**COUNT IV — BREACH OF CONTRACT AGAINST THE CRYOPORT DEFENDANTS**

65. All of the allegations set forth above are incorporated herein and made a part hereof but for the sake of brevity are not set forth.

66. Cryoport Systems entered into an agreement with Plaintiffs and/or with the Hatch Defendants for Plaintiffs' benefit to provide transportation services for Plaintiffs' embryos from New Jersey to Pacific in California.

67. The contract was completed and submitted per the terms of the contract to Cryoport, Inc., to carry out the shipment of the embryos by either Cryoport Inc., and/or Cryoport Systems.

68. Under that agreement, Cryoport was obligated to transport Plaintiffs' embryos with the care, preservation, identification, custody, tracking, and delivery required for cryopreserved biological materials and the intended frozen embryo transfer.

69. Plaintiffs performed their obligations under the transportation agreement, including payment of required charges, or were excused from further performance.

70. Cryoport breached the agreement by failing to deliver the embryo suitable for transfer in a condition and manner that permitted Pacific to locate and use it for the intended transfer and by failing to account for that embryo after delivery.

71. Cryoport's breach, individually or jointly, was a substantial factor in causing Plaintiffs' economic losses, emotional harm, and other damages.

**WHEREFORE**, Plaintiffs demands judgment against each Defendant in excess of $150,000, plus interest and costs, and for all relief permitted by law.

**COUNT V — BREACH OF BAILMENT DUTIES AGAINST THE CRYOPORT DEFENDANTS AND PACIFIC**

72. All of the allegations set forth above are incorporated herein and made a part hereof but for the sake of brevity are not set forth.

73. Plaintiffs entrusted their embryos to the Cryoport Defendants for transportation and delivery to Pacific, and Cryoport accepted possession and control of the embryos for that purpose.

74. Pacific received the frozen embryos for fertility treatment and preparation of the planned frozen embryo transfer.

75. Cryoport and Pacific each had a duty to exercise reasonable care in safeguarding, identifying, accounting for, and returning or making available Plaintiffs' embryos for the intended procedure.

76. Cryoport and Pacific breached those duties when the embryo suitable for transfer could not be located in the straw in which it was transported and could not be used for the planned frozen embryo transfer.

77. Cryoport's breach, individually or jointly, and Pacific's breaches, were a substantial factor in causing Plaintiffs' damages.

**WHEREFORE**, Plaintiffs demands judgment against each Defendant in excess of $150,000, plus interest and costs, and for all relief permitted by law.

## RELIEF

Plaintiffs demand judgment in their favor and against each Defendant in a monetary sum exceeding $150,000, and demands compensatory damages for all past and future damages permitted by law, together with interest, costs and disbursements as provided by law.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Adam M. Starr, Esquire and Andrew D. Swain, Esq. are hereby designated as trial counsel in the above matter.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

It is certified that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

It is certified that the damages recoverable exceed the sum of $150,000 exclusive of interest and costs.

I certify under penalty of perjury that the foregoing is true and correct. Executed on

11/23/2026.

**JARVE GRANATO STARR, LLC**

**S/ADAM M. STARR, ESQ.**
**ADAM M. STARR, ESQ.**
**NJ ATTORNEY ID: 020302000**
**10 LAKE CENTER EXECUTIVE PARK**
**401 ROUTE 73 NORTH, SUITE 204**
**MARLTON, NJ 08053**
**856-235-9500**
ASTARR@NJ-TRIALLWYERS.COM

**THE SWAIN LAW FIRM, P.C.**

**s/Andrew D. Swain, Esq.**
**Andrew D. Swain, Esq.**
**NJ Attorney ID: 042651994**
**2410 Bristol Road**
**Bensalem, PA 19020**
**215-750-7200**
**swain@swainlawfirm.com**

**Attorneys for Plaintiffs**